Circuit Court For Prince George's County
Clerk Of The Circuit Court
Courthouse
Upper Marlboro, Md. 20772-9987
MD Relay Service Voice/ TDD
1-800-735-2258

Writ of summons                                     Case ID: CAL12-25168

State of Maryland, Prince George's County to wit:

To:  US Investigations Servicse LLC
     Sv: CSC Lawyers Incorp Serv Co
     7 Saint Paul St, Ste 1660
     Baltimore, MD 21202

You are hereby summoned to file a written response by pleading or motion in this court to the attached complaint filed by:

OLIN B BREECE
2716 FEDERAL LANE
BOWIE MD 20715

Within 30 days after service of this summons upon you.

Witness the Honorable Sheila R. Tillerson Adams, Administrative Judge of the said Court.

Date issued: August 23, 2012

                                         _____
                                                    Clerk

To the person summoned:
  1. Personal attendance in court on the day named is not required.
  2. Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

                        Sheriff's Return

Fee $_____
                                          _____
                                                    Sheriff

Note:
  1. This summons is effective for service only if served within 60 days after the date it is issued.
  2. Proof of service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
  3. Return of served or un-served process shall be made promptly and in accordance with Rule 2-126.
  4. If this summons is served by private process, the process server shall file a separate affidavit as required by Rule 2-126 (a).

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND
CIVIL DIVISION

| | |
|---|---|
| OLIN B. BREECE<br>2716 Federal Lane<br>Bowie, MD 20715<br><br>　　　　Plaintiff,<br><br>v.<br><br>US INVESTIGATIONS SERVICES, LLC<br>Resident Agent: CSC, Lawyers Incorporating<br>Service Company, 7 St. Paul Street, Suite 1660<br>Baltimore, MD 21202<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.: CAL12-25168<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### Civil Complaint for Monetary Relief

Plaintiff, Olin B. Breece, by and through counsel, files this Civil Complaint for Monetary Relief against Defendant US Investigations Services, LLC ("USIS"), and states as follows:

**SUMMARY**

1. Mr. Breece is a former employee of USIS who is seeking compensation for unpaid overtime wages.

2. Mr. Breece's Complaint is based on the following assertions: (a) Mr. Breece was a non-exempt employee of USIS; (b) USIS improperly classified Mr. Breece as an exempt employee; (c) USIS unlawfully failed to compensate Mr. Breece for working overtime as mandated by Maryland law; and (d) USIS acted willfully and knowingly to deprive Mr. Breece of lawfully earned wages.

3. USIS is liable to Mr. Breece for violations of the Maryland Wage and Hour Law ("MWHL") and Maryland Wage Payment and Collection Law ("MWPCL"). *See* Md. Code Ann., Lab & Empl., § 3-401, *et seq.*, 3-501, *et seq.*

4. Mr. Breece is seeking monetary damages for unpaid wages, interest, costs, attorney's fees, and other damages provided for by statute.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims presented herein pursuant to MWHL and MWPCL. Md. Code Ann., Lab & Empl., §§ 3-427, 3-507.

6. Venue is appropriate in Prince George's County because this is a judicial district wherein USIS conducts business and has an office, and where many of the acts complained of took place.

## PARTIES

### A. Plaintiff

7. Mr. Breece is domiciled in the State of Maryland and is a resident of Prince George's County.

8. Mr. Breece was an "employee" of USIS from February 2005 through November 2010, as that term is defined by Maryland law.

9. Mr. Breece is entitled to the protections of the MWHL and MWPCL.

### B. Defendant

10. USIS is a Limitied Liability Company with its corporate headquarters at 7799 Leesburg Pike, Suite 400 South, Falls Church, VA 22043-2413.

11. On information and belief, USIS is a subsidiary of Altegrity Corporation.

12. At all relevant times, USIS was Mr. Breece's "employer", as that term is defined by Maryland law.

13. On information and belief, US Investigations Services, LLC provides a variety of services to commercial and federal government clients throughout the United States.

14. On information and belief, USIS is the largest commercial provider of background investigations for the federal government of the United States, and conducts business throughout many states, including Maryland, and specifically within Prince George's County.

15. Whenever in this Complaint it is alleged that USIS committed any act or omission, it is meant that USIS' officers, directors, vice-principals, agents, servants, regional managers, District Managers or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of USIS or was done in the routine and normal course and scope of employment of USIS' officers, directors, agents, servants, regional managers, district managers or employees.

## FACTUAL ALLEGATIONS

### A. Structure of Company

16. The Investigative Services Division ("ISD") of USIS was responsible for completing background investigations.

17. The ISD was divided into regional districts.

18. Within each regional district, background investigators were grouped into "teams".

19. Each team was assigned a "Team Leader".

20. Each team of investigators performed the same basic function- they completed background investigations.

21. The number of investigators on each team was not defined and varied at different times.

22. The average number of investigators on each team was between fifteen (15) and twenty (20).

23. Investigators could be transferred from one team to another while the nature of their job stayed the same.

24. Teams did not have a permanent status.

25. Mr. Breece worked out of the Hyattsville District.

26. At all times relevant to this Complaint, Rhonda Robinson was the Manager of the Hyattsville District and was Mr. Breece's immediate Supervisor.

B. **Mr. Breece's Job Titles with USIS**

27. Mr. Breece was hired by USIS in February of 2005 to complete background investigations.

28. Mr. Breece's first title as an employee of USIS was "Investigator One".

29. At that time, USIS classified background investigators into one of four levels: Investigator One, Two, Three or Four.

30. Mr. Breece's job title was later changed to "Associate Investigator" when USIS changed their method of classifying background investigators.

31. USIS now classifies investigators as Associate Investigator, Investigator, and Senior Investigator.

32. While holding the title of Associate Investigator for USIS, Mr. Breece's primary job duty was to complete background investigations by conducting interviews, conducting record

checks, confirming education and military service information, typing reports about his findings and submitting those reports electronically into USIS' system, among other tasks.

33. On or about October 2006, Mr. Breece was given the title of "Investigator".

34. As an Investigator, Mr. Breece's primary job duty was still to complete background investigations.

35. On or about May 2007, Mr. Breece was given the title of "Senior Investigator".

36. As a Senior Investigator, Mr. Breece's primary job duty was still to complete background investigations.

37. As a Senior Investigator, Mr. Breece also provided guidance to other investigators.

38. About two (2) weeks after becoming a Senior Investigator, near the end of May 2007, Mr. Breece became an "Acting Team Leader".

39. After six (6) months of being an Acting Team Leader, on or about November 2007, Mr. Breece received an official promotion to the position of "Team Leader".

C. **Mr. Breece's Job as Team Leader**

   i. Duties

40. First, Mr. Breece was the Team Leader of employees who lived in the Prince George's County area.

41. Mr. Breece was the Team Leader of various teams during his employment with USIS.

42. At the time Mr. Breece became a Team Leader, there was no written description of the duties of a Team Leader.

43. During the time Mr. Breece was employed by USIS as a Team Leader, USIS never gave him a written description of his job duties.

44. Mr. Breece's primary duty while holding the title of Team Leader was still to complete background investigations.

45. On average, Mr. Breece spent more of his time conducting background investigations than any other task.

46. USIS regularly assigned background investigations for Mr. Breece to conduct.

47. At times, Mr. Breece spent 100% of his work time conducting background investigations.

48. At one time, Mr. Breece's Supervisor directed him to spend an entire month conducting background investigations in Washington, D.C.

49. USIS dictated to Mr. Breece and other Team Leaders the percentage of their time that was to be spent on completing background investigations, which varied from week-to-week and at times varied from day-to-day.

50. At all times, Mr. Breece worked under the direct supervision of his Supervisor.

51. As Team Leader, Mr. Breece had the additional job duty of answering the questions of less experienced and less knowledgeable investigators on his team in order to assist them in completing investigations.

52. Mr. Breece also made suggestions to his team members on how to handle various situations.

53. Mr. Breece did not have the authority to impose any negative consequence on his team members for failing to take his suggestions.

54. Mr. Breece's role as Team Leader was most properly described as that of a "Mentor" or "Advisor".

55. The role of formal supervision of employees remained at all times with Mr. Breece's Supervisor.

56. Mr. Breece's primary duty as Team Leader was not the management of USIS or of any customarily recognized department or subdivision thereof.

57. Mr. Breece did not have the authority to hire employees.

58. Mr. Breece did not have the authority to fire the investigators on his team or any other employees.

59. Mr. Breece did not have the authority to advance, promote, or make any other change of status of the investigators on his team or any other employees.

60. Mr. Breece's suggestions and recommendations as to the hiring, firing, advancement, promotions or any other change of status of other employees were not given particular weight.

61. Mr. Breece strongly recommended that at least four investigators on his team be fired, and USIS did not fire any of them.

62. The investigators on Mr. Breece's team often yelled at Mr. Breece and used profane language when addressing Mr. Breece, presumably due to their knowledge that Mr. Breece did not have any authority to fire them.

63. Mr. Breece did not set the hours of work of the investigators on his team.

64. Mr. Breece did not assign cases to the investigators on his team.

65. Mr. Breece did not control or apportion the workload of the investigators on his team.

66. Mr. Breece did not determine the techniques investigators were to use in conducting investigations.

67. Mr. Breece did not provide for the safety and security of the investigators on his team.

68. Mr. Breece was not involved in planning or controlling the budget.

69. Mr. Breece did not monitor or implement legal compliance measures.

ii. <u>Hourly Pay</u>

    70. At all times while Mr. Breece was an Associate Investigator, Investigator, Senior Investigator and Acting Team Leader, USIS compensated him on an hourly basis.

    71. From about November 2007 until December of 2008, Mr. Breece, as a Team Leader, was paid on an hourly basis and was compensated at a rate of 1.5 times his regular rate for hours he reported as having worked in excess of forty hours in one workweek ("overtime hours").

    72. On or around January 2009, USIS informed Mr. Breece and other Team Leaders that USIS did not want to pay them for working overtime hours.

    73. Before January 2009, Mr. Breece was working an average of fifty (50) to sixty (60) hours per week, for an average of ten (10) to twenty (20) overtime hours per week.

    74. Mr. Breece inquired whether he would be expected to complete less work given that USIS did not want to compensate him for working overtime hours, and USIS informed Mr. Breece and other Team Leaders that they would be expected to complete the same amount of work or more.

    75. USIS knew that the amount of work it expected its Team Leaders to complete in one workweek could not feasibly be completed in forty hours.

    76. Mr. Breece continued to work an average of ten (10) to twenty (20) overtime hours per week.

    77. Mr. Breece's Supervisor had actual and constructive knowledge that Mr. Breece was regularly working more than forty hours per week.

    78. USIS did not compensate Mr. Breece for the overtime hours he worked from January 2009 to June 2009.

79. When Mr. Breece and other Team Leaders expressed disagreement and discontent with USIS' practice of encouraging employees to work unpaid overtime hours, USIS routinely dismissed their complaints by stating, "It is what it is."

80. Despite his fear of reprisal by USIS, Mr. Breece occasionally reported some of the overtime hours he worked to USIS, and USIS paid him for those hours before June 2009.

iii. Salaried Pay

81. Near the end May 2009, USIS informed Mr. Breece and all other Team Leaders via teleconference that they would be compensated on a salaried basis.

82. Mr. Breece and other Team Leaders initially objected to becoming salaried.

83. USIS threatened to demote any Team Leader to the position of Investigator that objected to being salaried rather than being paid on an hourly basis.

84. USIS told Mr. Breece and other Team Leaders that as salaried employees, they would become part of the management structure and would be eligible to earn bonuses.

85. USIS told Mr. Breece and other Team Leaders that in addition to becoming salaried, they would become "real managers".

86. Contrary to USIS' assertions, Mr. Breece's job duties as Team Leader did not change when he became a salaried employee and he did not gain any new discretionary powers.

87. Mr. Breece agreed to continue in his employment with USIS as a salaried Team Leader based on USIS' assertions that he would be eligible to earn bonuses and that the only path to promotion was to remain a Team Leader.

88. USIS regularly recognized Mr. Breece for his outstanding performance.

89. Despite acknowledging Mr. Breece's excellent work, USIS never gave Mr. Breece any bonuses.

90. Managers of USIS regularly earned bonuses.

91. Mr. Breece earned less money as a salaried employee than he would have if he had been paid on an hourly basis and compensated at a premium rate for working overtime hours.

92. At least four of Mr. Breece's team members earned more as investigators (who were paid for working overtime) than Mr. Breece earned as their Team Leader.

**D. Wages USIS Paid Mr. Breece**

93. From January 2009 to July 2009, Mr. Breece's pay stubs indicate USIS paid him at a rate of $32.1120 per hour for regular hours.

94. Mr. Breece's pay stubs issued before June of 2009 show that USIS paid him at a rate of $48.1680 for overtime hours that he reported, though Mr. Breece, acting under the direction of USIS, did not report all the hours he worked for the reasons discussed above.

95. Beginning in June 2009, USIS paid Mr. Breece on a salaried basis.

96. Mr. Breece's pay stubs from 5/31/2009 to 8/8/2009 show that USIS paid him approximately $2,569 every pay period.

97. Beginning on 8/9/2009, Mr. Breece's pay stubs indicate USIS gave him a raise of $1.123 per hour and that Mr. Breece's salary rate was the equivalent of $33.2350 per hour.

98. Mr. Breece's pay stubs from 8/9/2009 to 7/24/2010 show that USIS paid Mr. Breece approximately $2,659 every pay period except one period during which he took unpaid time off.

99. Beginning on 7/25/2010, Mr. Breece's pay stubs indicate USIS gave him a $0.9975 per hour raise and that Mr. Breece's salary rate was the equivalent of $34.2325 per hour.

100.   Mr. Breece's pay stubs from 7/25/2010 to 11/13/2010 show that USIS paid Mr. Breece $2,738.60 every pay period.

101. On 12/3/2010, USIS paid Mr. Breece $273.86 for having worked his final 8 hours as an employee of USIS.

### E. USIS Failed to Maintain Accurate Time Records

102. USIS had an affirmative legal duty to maintain accurate records demonstrating the precise number of hours worked by all non-exempt employees, including Mr. Breece.

103. USIS failed in its duty to maintain accurate records of the hours Mr. Breece worked.

104. Examples of USIS' failure to maintain accurate records of the hours Mr. Breece worked include the following: (1) discouraging Mr. Breece from reporting hours worked in excess of 40 hours in a single week while Mr. Breece was still paid on an hourly basis; (2) encouraging Mr. Breece to work undocumented hours in order to improve his team's "numbers"; and (3) misleading Mr. Breece to believe that he was not entitled to compensation for hours worked in excess of 40 and that it was not necessary to report those hours.

### F. Estimate of Unpaid Overtime Hours Worked by Mr. Breece While Salaried

105. USIS misled Mr. Breece to believe that he was not entitled to receive pay for working overtime hours.

106. As the result of having been misled by USIS, Mr. Breece did not report all of the overtime hours he worked and did not maintain precise records of the actual hours he worked.

107. Occasionally, Mr. Breece reported working overtime hours while he was salaried because he wanted to ensure that his Supervisor recognized his dedication.

108.    As an example, Mr. Breece's paystub issued on 10/30/2009 shows that Mr. Breece reported working 88 hours, and his paystub issued on 11/27 shows that he reported working 85.5 hours, but USIS only paid Mr. Breece $2,658.85 for both of those pay periods (the same amount USIS paid Mr. Breece when he reported working only 80 hours).

109.    Mr. Breece's paystubs show that he worked at least 55.5 hours of unpaid overtime for which USIS did not compensate him at all.

110.    In addition, from July of 2009 to November of 2010, Mr. Breece estimates that he worked an average of fifteen (15) hours of overtime per week, excluding weeks during which he took vacation.

111.    Mr. Breece has made a good faith estimate of the hours he worked based on his clear recollection of his regular work schedule.

112.    Mr. Breece estimates that he worked a total of 775.5 hours of overtime for which USIS did not properly compensate him.

113.    For all overtime hours Mr. Breece worked on or before 8/8/2009, USIS was legally obligated to pay Mr. Breece at the rate of $48.1680 per hour (1.5 times Mr. Breece's regular wage rate of $32.1120 per hour).

114.    For all overtime hours Mr. Breece worked from 8/9/2009 to 7/24/2010, USIS was legally obligated to pay Mr. Breece at the rate of $49.8525 per hour (1.5 times Mr. Breece's regular wage rate of $33.2350 per hour).

115.    For all overtime hours Mr. Breece worked from 7/25/2010 to 11/27/2010, USIS was legally obligated to pay Mr. Breece at the rate of $51.3488 per hour (1.5 times Mr. Breece's regular wage rate of $34.2325 per hour).

116.    Mr. Breece seeks to recover all wages owed to the fullest extent the applicable statutes permit.

117.    Mr. Breece estimates that USIS owes him at least $38,784.67 in unpaid overtime wages.

118.    Mr. Breece's estimates of the number of hours he worked and the amount USIS owes him for unpaid wages may change after Mr. Breece is given an opportunity during discovery to review the records USIS maintained during his employment.

### G. USIS Acted Willfully

119.    The illegal pay practices claimed herein were conceived and executed willfully by USIS.

120.    Mr. Breece was a non-exempt employee pursuant to the MWHL and MWPCL and was entitled to 1.5 times his regular wage for all overtime hours he worked.

121.    For a year and a half, USIS compensated Mr. Breece as a Team Leader at the premium rate for overtime hours he reported having worked.

122.    Without changing the nature of Mr. Breece's job duties as Team Leader, USIS suddenly stopped paying him for reported overtime hours and changed his pay to salaried.

123.    When USIS began paying Mr. Breece on a salaried basis, USIS made promises to make Mr. Breece a "real manager", indicating that USIS knew Mr. Breece did not meet the strict standards to be classified as an exempt employee.

124.    Mr. Breece did not meet the strict standards of any of the exemptions as set out in 29 CFR Part 541.

125. USIS issued pay stubs reflecting that Mr. Breece worked overtime hours but did not compensate him for those hours.

126. USIS informed Mr. Breece that being a Team Leader was the track to being promoted to Management of USIS.

127. USIS intentionally informed Mr. Breece that being a Team Leader was the track to being promoted to Management in order to dissuade him from asserting his legal right to premium compensation for working overtime hours.

128. USIS benefited tremendously from the willful and illegal misconduct described in this Complaint. USIS saved a huge sum of money by illegally withholding earned wages owed to loyal, dedicated Team Leaders such as Mr. Breece, and Mr. Breece is respectfully requesting that this Honorable Court grant him the relief described below.

COUNT I

Maryland Wage and Hour Law Md. Code Ann., Lab & Empl. § 3-401, et seq.

(Failure to pay wages owed for all hours worked and failure to pay overtime)

129. Mr. Breece hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

130. Mr. Breece is protected by the MWHL and was entitled to be compensated for all hours worked and to be paid at the premium rate of 1.5 times his regular hourly rate for each hour worked in excess of forty hours per week. Md. Code Ann., Lab & Empl. §§ 3-413(b); 3-415(a).

131. USIS did not pay Mr. Breece for all hours he actually worked as an employee of USIS.

132.  USIS did not compensate Mr. Breece for each hour worked in excess of forty hours during the weeks he worked from January 2009 to November 2010.

133.  USIS' failure to pay Mr. Breece the appropriate wages for all hours worked violated MWHL. Id. at § 3-413(b).

134.  USIS' failure to compensate Mr. Breece at 1.5 times his regular wage for each hour in excess of forty (40) hours per workweek violated MWHL. Id. at §§ 3-415(a); 3-420.

135.  As the direct and proximate result of USIS' violations of the MWHL, Mr. Breece suffered significant monetary damages.

136.  Pursuant to the MWHL, USIS is liable to Mr. Breece for all hours he worked which were not compensated and for the difference between the wages paid to him and the wages required by statute, plus reasonable attorneys' fees, pre- and post- judgment interest, fees and costs. Id. at § 3-427(a).

COUNT II

Maryland Wage Payment and Collection Law Md. Code Ann., Lab & Empl. § 3-501, *et seq.*
(Failure to timely and regularly pay all wages earned)

137.  Mr. Breece hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

138.  Pursuant to the MWPCL, USIS must pay their employees all wages due at regular pay periods. Md. Code Ann., Lab. & Empl. § 3.-502. "Wage" is defined as "all compensation that is due to an employee for employment." This definition has been

amended by the Maryland legislature to clarify that the statute is intended to specifically include overtime wages. Id. at § 4-501(c).

139. Pursuant to MWPCL, USIS must pay their employees all wages due for work that the employee performed before the termination of employment on, or before, the day on which the employee would have been paid had their employment not been terminated. Id. at § 3-505.

140. Mr. Breece has not been compensated his full measure of wages for all hours worked and was not compensated at the proper overtime premium rate for hours worked in excess of forty (40) in single workweek.

141. By failing to timely pay Mr. Breece his wages when due, USIS violated the MWPCL. Id. at §§ 3-502, 505.

142. USIS did not withhold Mr. Breece's wages as a result of a *bona fide* dispute.

143. As the direct and proximate result of USIS' violations of the MWPCL, Mr. Breece suffered significant monetary damages.

144. Because more than two weeks have elapsed from the date on which USIS was required to have paid the wages, USIS is liable to Mr. Breece for his unpaid wages, plus an additional amount up to three (3) times the unpaid wages, reasonable attorneys' fees, interests and costs. Id. at § 3-507.2.

JURY DEMAND

145. Mr. Breece demands a trial by jury on all issues triable to a jury.

PRAYER FOR RELIEF

146. Mr. Breece prays that this Honorable Court:

a. Award judgment against USIS and in favor of Mr. Breece in the amount of economic damages and liquidated damages to be determined at trial, together with reasonable attorneys' fees and costs of this action, all as provided for by MWHL;

b. Award judgment in the amount of the difference between the wages actually paid and the wages lawfully owed as provided under the MWHL. Md. Code Ann., Lab. & Empl. § 3-427(a);

c. Award judgment in the amount of all back wages due and unpaid as provided in the MWPCL. Md. Code Ann., Lab. & Empl. § 3-507.2.

d. Award a total judgment in an amount equal to three times the amount of wages due, as provided for in the MWPCL. Md. Code Ann., Lab. & Empl. § 3-507.2.

e. Award restitution and/or disgorgement of profits;

f. Award pre-judgment interest at the legal rate of 10% per annum. Md. Code Ann., Cts. & Jud. Proc. §11–107(a);

g. Award interest due on unpaid wages at the legal rate of 10% per annum. Id.;

h. Award reasonable attorneys' fees and the costs of this action as provided under Maryland law, the MWHL and the MWPCL. Md. Code Ann., Lab. & Empl. §§ 3-427(d), 3-507.2;

i. Award reasonable attorneys' fees in the event of an appeal, as well as post-judgment interest consistent with applicable law; and

j. Award any such further relief this Honorable Court deems just and proper to award.

August 13, 2012

Respectfully submitted,

*[signature]*

Quinn Lobato, Esq.
8583 Seasons Way
Lanham, Maryland 20706
Telephone: (240) 305-4770
quinn.lobato@gmail.com
*Attorney for Olin B. Breece*